339 So.2d 373 (1976)
Mrs. Audrey L. STERNBERG, Plaintiff-Appellee,
v.
Johnnie W. MASON, Defendant-Appellant.
No. 10997.
Court of Appeal of Louisiana, First Circuit.
September 29, 1976.
Rehearing Denied November 15, 1976.
Writ Refused February 1, 1977.
*374 Sargent Pitcher, Baton Rouge, for defendant-appellant.
Ralph Brewer, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
In this cause plaintiff, as the holder of an installment mortgage note, instituted an executory process to seize and sell two parcels of land covered by the mortgage. Defendant, F & B Builders, Inc., sought to enjoin the seizure and sale on the grounds that the plaintiff had willingly received installment payments after their due dates and that such acquiescence precluded an acceleration of the balance due on the note without placing it in default.
The testimony adduced at the hearing for defendant's preliminary injunction was not transcribed and therefore is not a part of *375 the record before us. However, for the purposes of this decision we accept the findings of fact as set forth in the trial judge's written reasons for judgment. It is because his written reasons for judgment appeared to us to be contrary to law that we granted the instant writ.
Plaintiff is the holder of one certain promissory note dated August 5, 1966, in the principal sum of $7,030.00 executed by Johnnie W. Mason to the order of "MYSELF", and payable in twelve monthly installments of $25.00, and the remaining monthly installments of $50.00 per month, payable on the first day of September, 1966 and on the same day each month thereafter until the said note is paid in full. This note was identified with an act of mortgage of the same date covering the subject property.
We quote from the trial judge's written reasons for judgment, to-wit:
"The evidence shows that upon acquisition of the property by F & B Builders on December 11, 1974, a payment book was furnished it by the plaintiff in which the `Date Due' was shown to be the `15th'; however, by January of 1975, F & B Builders commenced to pay the monthly installment after the 15th of the month and continued this custom frequently until the disputed December payment. The evidence further shows that in December an envelope was mailed to plaintiff by the mover, but no check was enclosed. Subsequently, a check for $50.00 dated December 6, 1975, was received by the plaintiff, but was returned. Thereafter, plaintiff's attorney directed a demand letter dated December 17, 1975, in which it was indicated that suit would be instituted because of continuing delinquency in making payments. On December 18th, whether in response to the letter of demand or not, F & B Builders, through its managing officer, Robert Fuhrman, forwarded two payments to Mrs. Sternberg. These payments were rejected by plaintiff's attorney on December 19th and he declared that the entire balance on the note was due.
"The mortgage note contains the usual acceleration provision: `Failure to pay any installment promptly when it becomes due shall automatically render all unpaid balance of this note due and exigible.' (Exhibit S-2) It is evident that mover, F & B Builders, Inc., was delinquent in its payment in December, whether consideration is given to the declarations made in the payment book or not. Further, it is evident that it had been tardy in making payments from the inception of its acquisition of the property. Therefore, the only question is should the plaintiff be barred from accelerating the note because of its repeated acceptance of late payments? The answer is that she is not. In Motor Liens, Inc. v. Motion Picture Advertising Service Co., Inc., 164 La. 440, 114 So. 89, cited by counsel for the plaintiff, a note containing practically the same automatic acceleration provision was considered by the court in regard to the defendant's claim that the creditor, by accepting payment of installments on the note after maturity, waived the provisions maturing all unpaid installments. The Supreme Court rejected the contention by stating:
"`The acceptance of a payment on account after the notes had matured by failure to pay the installments promptly did not in our opinion have the effect contended for by defendant. The notes had then matured in full accordingly to the terms thereof, and the acceptance of a payment on account thereof did not have the effect of extending the time for payment of the balance due thereon.'"
"Consequently, it appearing that the jurisprudence does not sanction the concept of waiver, the note has been accelerated and the entire balance is now due and exigible. Accordingly, the plaintiff is entitled to proceed via executiva and F & B Builders has no basis for enjoining the proposed sale. As such, the rule is vacated, annulled and set aside."
The law applicable to situations such as that presented here was set out with *376 particularity in Rex Credit Co. v. Kirsch, 4 So.2d 797, 799 (4th La.App., 1941):
It thus appears that there are two lines of cases, one holding that a stipulation providing for acceleration or for some other such harsh right is waived where the holder of the note, or the obligee in a contract, permits a departure from the strict provisions of the contract, and the other line of cases which does not seem to be in conflict, which holds that there is no waiver if the obligor or the maker of the note is put on notice in advance that the granting of such indulgences or delays will not be considered as a waiver of the right to insist upon the strict enforcement of the stipulation of the note or contract.
The first line of cases emanates from the holding in Standard Brewing Company v. Anderson, 121 La. 935, 46 So. 926 (1908) which stands generally for the proposition that where a series of installment payments are due and the payee customarily permits payments to be made after the date on which they are due, there is established a course of conduct whereby the payee, by acquiescence therein is deemed to have waived his right to demand that an acceleration clause be enforced without first placing the payor in default thereby signaling an end to such conduct.[1] Acquiescence in such cases may be positive and verbal or it may be tacit. Jones v. Paul, 254 So.2d 915 (1st La.App., 1971).
The basis for such a rule is to prevent an obligee from lulling an obligor into a false sense of security by accepting late payments over an extended period of time, without demand for punctuality, and then at a future date of his own choosing accelerate the entire balance due on the obligation when the "late" payment complained of falls within the same pattern.
This rule (Standard Brewing Co., above) has no application where the obligee has made frequent and unsuccessful demands for punctual payments or where acceptance of tardy payments is the result of "unwilling or forced" indulgence on the obligee's part. Briede v. Babst, 131 La. 159, 59 So. 106 (1912), Himbola Manor Apartments v. Allen, 315 So.2d 790 (3rd La.App., 1975) and authorities therein cited at 315 So.2d 790, 793. In Briede, the court said of Standard Brewing: "That doctrine can obtain only where the tenant is ready to pay the rent promptly and needs no indulgence, but delays in paying simply because he is under the impression, produced by the lessor's past conduct, that it is a matter of no moment whether the payments be made promptly or a few days late."
The other line of cases, Motor Liens v. Motion Picture Advertising Service Co., above, Cantu v. Fenner, Beane and Ungerleider, 181 La. 743, 160 So. 399 (1935); and Villere & Co. v. Latter, 186 La. 91, 171 So. 705 (1936) are cited for the proposition that where a contract of indebtedness contains a stipulation that failure to strictly and promptly enforce the conditions of the agreement shall not operate as a waiver to enforce the terms thereof at anytime and without the necessity of demand or putting in default. In essence, these special clauses are urged to be a forewarning in themselves. It is contended that the contracts themselves constituted the law between the parties and should be strictly construed.
However, we observe that in each of these cases the court waived the equities involved. In Motor Liens, Inc. it was noted that at the time suit was filed other installments on the notes had become due and still remained unpaid. In Cantu, the plaintiff appealed from a judgment dismissing his action on an exception of no cause of action. In affirming, the Supreme Court stated that plaintiff's petition contained no allegations as to fraud or misrepresentation "or unfair advantage over the plaintiff and retained the benefits realized from any *377 wrongful acts or misconduct". (160 So. 399, 403.) In Villere and Co., Inc., plaintiff attempted to require strict adherence to the contract after having earlier brought a suit for only past due rent installments. The court stated that since the contract did not afford plaintiff that option, it could not later sue for accelerated rentals.
Our perusal of these cases, both those expressly invoking a theory of estoppel (waiver) and those declining to do so, satisfies us that each case was decided on facts peculiar to the matter there in controversy. While it is true that in each of these cases the court held that the contract was to be enforced according to its terms, the court nonetheless considered the defense of waiver and determined that the facts offered in support of such defense did not warrant a holding that the terms of the contracts themselves were modified or altered by the conduct of the parties.
We do not view these cases (Motor Liens, Inc., etc.) as authority for the proposition that in each and every case where a contract contains such a provision the conduct of the obligee is immaterial and that such obligee is entitled to strict enforcement of an acceleration clause regardless of the circumstances. An obligee is, of course, entitled to have the contract strictly complied with and to receive his payments promptly when due. However, when there has developed a course of conduct, i. e., routine late payments without complaint or objection over an extended period of time sufficient to create a justifiable belief that it is of no moment, it is essential in the interest of fairness that the obligee make known to the obligor his intent to discontinue acceptance of late payments.
With respect to the facts in the instant case, the trial judge found that when defendant purchased the property on December 11, 1974, it received a payment book from the plaintiff in which the "due date" was shown to be the "15th" and that by January of 1975 defendant had commenced to pay the monthly installments after the 15th and continued this "custom" frequently until the disputed December (1975) payment. Certainly, plaintiff should not be heard to complain if the payments were made by the "15th" in accordance with the payment book she furnished the defendant. While the trial judge's reasons for judgment do not mention any objection on plaintiff's part to this manner of payment, we assume that none was made. Plaintiff's brief leads us to believe that no objection was made because she takes the "hard" line that no objection on her part was necessary. Her position would have more merit if she had not permitted one entire year to expire wherein she accepted these payments after the due date or had her payment book itself not been in conflict with the note. These two factors convince us that there existed a situation which required plaintiff to notify defendant of her desire to have these payments made punctually and in accordance with the terms of the note. We therefore hold that it was error on the part of the trial judge to hold that Motor Liens, Inc., above, permitted the acceleration of all unpaid installments under the particular facts of this case.
Accordingly, for these reasons, the writ previously issued herein is made peremptory and the judgment of the trial court recalling and vacating defendant's, F & B Builders, Inc., rule for a preliminary injunction is reversed and set aside and judgment is rendered herein decreeing that plaintiff is entitled to its preliminary injunction and this matter is remanded to the trial court for the purpose of the issuance of said preliminary injunction. All costs of these proceedings are assessed against plaintiff.
WRIT MADE PEREMPTORY AND THE RULING OF THE TRIAL COURT REVERSED.
NOTES
[1] Shnaider v. Graffagnini, 154 La. 363, 97 So. 491; Saxton v. Para Rubber Company, 166 La. 308, 117 So. 235; Id., 166 La. 866, 118 So. 64; Falco v. Gilbert, 2 La.App. 71, 72; Mahan v. LaFaye, 3 La.App. 445; Wunderlich v. Simpkin, 5 La.App. 35; Gottlieb v. Schloss, 5 La.App. 379; Richardson v. American National Insurance Co., 18 La.App. 468, 137 So. 370.