**171 So. 705**

**VILLERE & CO. v. LATTER et al.**

**No. 33966.**

Nov. 30, 1936.

Rehearing Denied Dec. 21, 1936.

John H. Hammel, Jr., of New Orleans, for appellant Kate Latter.

Charles J. Rivet, of New Orleans, for appellant Harry Latter.

Monroe & Lemann and Robert G. Polack, all of New Orleans, for appellee.

ODOM, Justice.

Villere & Co., Inc., the plaintiff, by written contract leased to Kate Latter a part of the ground floor of the building located at the corner of Royal and Iberville streets in the city of New Orleans, designated as municipal number 143 Royal street. The lease was for a period of five years dating from September 1, 1929, at a monthly rental of $250, payable monthly. Harry Latter, a brother of the lessee, made himself a party to the contract and bound himself in solido with her "for the faithful discharge of all obligations to be performed on the part of the lessee."

Villere & Co., Inc., filed the present suit against Kate Latter, the lessee, and Harry Latter, the co-obligator, on April 10, 1934, alleging that the lessee had defaulted on her payments and that by virtue of the acceleration clause in the lease contract the whole amount due under the lease was then payable, amounting to $4,250, together with interest and attorney's fees, and they prayed for judgment accordingly.

Plaintiff alleged that the lessee paid all rentals due up to and including the month of January, 1933, but paid nothing thereafter, and that in May, 1933, about one year prior to the date on which the present suit was filed, it filed suit against Kate and Harry Latter for $750, this being the amount due for the months of February, March, and April of that year, the suit being No. 202,194 on the docket of the civil district court; that in the said suit it had reserved its right to make proof of and obtain judgment for such additional sums as might become due during the pendency of that suit and had also reserved the right to

declare, at such time as it saw fit, all the remaining monthly rentals due and payable as provided by the express terms of the contract; that it had obtained judgment in that suit for the amount sued for. It made the record in that suit, as well as the lease contract, a part of its petition in the present suit.

Defendants filed exceptions of no cause and of no right of action. Reserving their rights under the exceptions, which were later overruled, they filed answer in which they set up the following, among other defenses: That the lease contract provided that upon the tenant's failure to pay the monthly rentals promptly, the lessor could exercise either one or the other of the following two options: First, to demand the entire rent for the whole term, or, second, to cancel the lease; that it could exercise no other option or adopt any other course of proceeding without violating the express terms of the contract; that when plaintiff filed its first suit the lessee was admittedly in default on three monthly payments, which default, under the terms of the contract, caused all the monthly rentals to become due and payable immediately; and that plaintiff's demand for the amount of the rentals which had accrued up to the time the suit was filed was a waiver of the rights granted by the contract and in effect a cancellation thereof as of the date the suit was filed.

After the answer setting up this defense was filed, plaintiff filed a supplemental petition in which it reiterated all the allegations of its original petition, and, in addition, averred that:

"The lease sued on herein is in full force and effect, and has been repeatedly recognized as being in full force and effect by the defendants herein, who have during the months of December, 1933, and January and February, 1934, sublet the premises in question through their agent Latter & Blum, Inc., who has collected the rent therefor."

The purpose of this allegation, of course, was to meet the special defense set up by defendants in their answer. When this supplemental petition was filed, the defendants filed another exception, alleging that the original and amended petitions read together failed to show a cause or right of action.

Plaintiff obtained judgment as prayed for, and defendants appealed.

The entire record in the first suit, which was filed in May, 1933, practically one year before the institution of the present one, was made part of the plaintiff's petition, as was the lease contract. In the first suit plaintiff alleged that the lessee had defaulted on her rentals for the months of February, March, and April of that year, and it prayed for judgment for $750, the amount due for those months. The lessee admitted the default and plaintiff obtained judgment, seized, and sold the stock of goods found in the premises for $235.50.

In the present suit the plaintiff invokes the following special provision of the lease contract:

"Should lessee at any time violate any of the conditions of this lease, or fail to comply with any of lessee's obligations

hereunder, or fail to pay the rent or water bill or similar charges, punctually at maturity, as stipulated, and remain in default after 10 days written notice thereof, * * * the rent for the whole unexpired term of this lease shall, without putting lessee in default, at once become due and exigible, and in any such event, lessor shall have the option either at once to demand the entire rent for the whole term or to immediately cancel this lease without putting the lessee in default. * * *"

Plaintiff seems to have proceeded all through upon the theory that under the contract it had the option to declare all installments under the lease due and payable in case the lessee failed to pay its rentals promptly as they matured. But a careful reading of the contract shows that the lessee's failure to pay the rent promptly and her remaining in default for ten days of themselves caused all of the installments to become immediately due and payable without any action on the part of the lessor. The contract shows that upon the failure to pay the rent "promptly at maturity" the rent for the whole term of the lease, without putting in default, at once becomes due and exigible.

Therefore, in May, 1933, when plaintiff filed its suit to collect $750, this being the amount of rent which had accrued up to that time, the rent for the whole term of the lease was then "due and exigible" under the precise language of the contract. Then what course of procedure was open to the plaintiff under the contract? The contract speaks for itself. It says that "in any such event," that is, in case of the

lessee's default for ten days, the "lessor shall have the option either at once to demand the entire rent for the whole term or to immediately cancel this lease without putting lessee in default."

These options are specific and exclusive. The lessor could have demanded the rentals for the whole term of the lease, or could have canceled it. It did neither, but demanded the amount already due and attempted to reserve its right, at any time it saw fit, to demand the balance or to cancel the lease. It had no such right under the contract, which is the law between the parties.

The contract goes on to provide that:

"Failure to strictly and promptly enforce these conditions shall not operate as a waiver of lessor's rights, lessor expressly reserving the right to always enforce prompt payment of rent or to cancel this lease, regardless of any indulgences or extensions previously granted."

What that means and all it means is just what it says, which is that the lessor's failure to exercise strictly and promptly the rights granted or the granting of extensions and indulgences by the lessor toward the lessee should not operate as a waiver of the lessor's rights to enforce the prompt payment of the rent or to cancel the lease.

The last-quoted clause of the contract is relied upon by counsel for plaintiff in support of their arguments that the lessor had the right at any time to sue to collect accrued rentals and hold in abeyance its right to exercise the options either to

demand the entire rent for the whole term or to cancel the lease.

■ Counsel, we think, have misinterpreted the contract. We find nowhere therein authority for plaintiff's course of procedure. By filing the first suit to enforce the payment of the installments then due, it adopted a procedure not authorized by the contract, and by doing so waived its option to demand "at once" the entire rent, which is what it is doing in the present suit. When it waived this right or option under the contract to demand the "entire rent for the whole term," it no longer had a cause or right of action to enforce the option which it is invoking in the present suit.

■ This lease extended over a period of five years, the rentals being $250 per month, payable monthly. Under the general law, which is found in article 2065 of the Revised Civil Code, these payments could have been severally made or severally enforced. That article of the Code reads as follows:

"*Sum Payable in Instalments.* Where a sum is promised to be paid at different instalments, a conjunctive obligation is created, and the payment may be severally paid or enforced. Rents, payable at fixed periods, come also under this rule."

Under that article, when a lessor has granted a long term lease with rentals payable in monthly installments, he may enforce by suit payment of the installments as they mature without waiving his rights to enforce payment of such installments as subsequently may become due. In Brandagee v. Chamberlin, 2 Rob. 207, it was held that where several installments are due, the lessor may sue to collect the first maturing installment without waiving his right to enforce the payment of the other installments which were due when the suit was filed. So, also, Saia v. Lusco, 155 La. 191, 99 So. 34. A lessor may also have inserted in the lease contract an acceleration clause, giving him the right or option under certain conditions to declare all rental installments due and payable. But in the case presently before us, the contract, which we are informed was written by the lessor's agent, does not come under and is not governed by the general law, but is a law which the parties made for themselves. They declared in express terms that a default on the part of the lessee, of itself, matured all installments, and that upon such default the lessor had the right or option to do either one of two things; it could demand payment of the rent for the whole term of the lease, or could cancel it. By making the demand which it did in the first suit, plaintiff waived its right to demand payment of all the installments.

■ Counsel for plaintiff point out that in the first suit it reserved its right to proceed as it has done in this suit. The answer is that it could reserve only such rights as the contract granted, and none such are granted.

■ In its supplemental petition, plaintiff alleged that defendants had, since the filing of the first suit, recognized the existence and continuance of the contract by subleasing the premises and collecting

rentals from the sublessee. The testimony shows that the lessee, finding herself no longer able to continue in business after the lessor had seized and sold her stock of goods, did find a party who was willing to sublease the property for the remainder of the term and that the lessor refused to accept the party as subtenant; and that the lessee finally found a subtenant who was satisfactory to the lessor.

· Under the circumstances, we do not think that was equivalent to an acknowledgment by the lessee that the original contract was still in existence. The fact is that the contract provides that "failure to comply with any condition or obligation of this lease will make lessee liable for any loss or damage sustained by lessor." Defendants set up in their answer and subsequently testified that in attempting to sublease the property to one party and finally leasing it to another they were endeavoring to minimize the damage which might arise from their failure to comply with their original obligation to pay the rent.

· Our conclusion is that plaintiff cannot recover under its claim for all the installments for the whole lease. But defendants admitted in answer that they had collected from the subtenant, M. Sax, the sum of $225, which amount they had offered to pay. Plaintiff is entitled to judgment for this amount.

For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof to the sum of $225, and, as thus amended, it is affirmed, plaintiff to pay all costs.