WARD, Judge,
dissenting.
While the majority has affirmed in deference to the Trial Court's finding of fact, I believe the critical issue in this appeal is one of law. What standard is to be applied to the lessor’s refusal to consent to a sublease? I believe the Trial Court and the majority erred in deciding the case on the issue of whether Serio unreasonably withheld his consent to sublease.
I respectfully submit that the issue is whether Serio abused his rights as a lessor. There is a difference, and I believe the lease itself is dispositive of the issue which is before the Court.
In general, when a lease contains no interdiction as to subleasing, then a lessee has the right to sublease freely. La.C.C. Art. 2725. But a lease may wholly interdict and prohibit a sublease; or the lease may partially interdict the right of a lesfeee to sublease. Art. 2725. When a lessor partially interdicts the right of a lessee to sublease by stipulating that it may riot be done without the lessor’s written consent, then the lessor has a right to withhold his consent, subject only to the limitation that he may not abuse his rights as a lessor. Illinois Central Gulf R. Co. v. International Harvester Co., 368 So.2d 1009 (La. 1979). When the lease stipulates that the lessee may not sublease without the written consent of the lessor, and additionally stipulates that the lessor shall not unreasonably withhold his consent, then there is a question of fact as to whether the lessor unreasonably withheld his consent. Caplan v. Latter & Blum, Inc., 468 So.2d 1188 (La.1985).
In the instant case, the lease contains a partial interdiction which prohibits the lessee from subleasing without the written consent of the lessor. But the lease does not contain the stipulation that the lessor will not unreasonably withhold his consent. Consequently, Caplan, relied upon by the majority, is not applicable because the Ca-plan lease contained the stipulation that the lessor would not unreasonably withhold its consent. That stipulation was emphasized in the Caplan decision as the basis for distinguishing Caplan from Illinois Central.
The majority also relies on Associates Commercial Corp. v. Bayou Management Inc., 426 So.2d 672 (La.App. 1st Cir.1982). That case is factually similar to the instant one in that the lease did not contain the *211 stipulation that the lessor may not unreasonably withhold consent to sublease. While I agree with the result reached in Associates, I disagree with that part of the decision which would read into every lease where written consent is required the provision that it shall not be unreasonably withheld. This, I believe, is inconsistent with the Supreme Court’s decision in Illinois Central, and as a matter of fact, it would render unnecessary any stipulation that consent would not be unreasnably withheld.
I believe Illinois Central is controlling here; that is, when the lease requires the written consent of the lessor but does not stipulate that it will not be unreasonably withheld, the proper analysis is to question whether withholding consent is an abuse of rights by the lessor.
I am at a loss to understand why the majority reaches its conclusion while relying upon Illinois Central which applies the abuse of rights doctrine. That case stands for the proposition that if a lessor withholds his consent with a predominate intent to harm, obtaining little or no benefit from the exercise of his rights, courts in civil law jurisdictions will find the act abusive — an abuse of rights. In Illinois Central the lessor’s motive for withholding consent was to negotiate for a cancellation of the lease because the property had greatly appreciated in value, reducing the rental revenues to an inadequate level. In essence, the Court in Illinois Central frankly stated that the lessor’s reason for not approving a sublease was money, which the Court concluded was a valid reason to withhold consent. In the present case, Serio exercised his right to withhold his consent in exchange for one half of the purchase price — a serious and legitimate motive approved of in Illinois Central. For this reason, and because of the facts and circumstances described below, I do not believe Serio abused his rights as a lessor.
As the majority opinion correctly states, Serio gave his written consent to Upton, President of Flame-N-Burger, to sublease to Art Spiropoulous. That sublease also gave Spiropoulous the right to sublease, upon obtaining the written consent of Flame-N-Burger, without mentioning that written consent must be obtained from Ser-io. Nevertheless, Spiropoulous agreed to abide by all of the terms and conditions of that primary lease. A reasonable interpretation, I submit, would mean that Spiropou-lous would have to obtain the written consent of both Serio and Flame-N-Burger to sublease. As a matter of fact, when Spiro-poulous and his wife Lynne Portlock were divorced, Serio’s consent was sought for a proposed sublease from Flame-N-Burger to Portlock. (Serior Exhibit 3). Serio refused. Rather than agree to a new sublease he insisted that Lynne Portlock should merely be added as a sublessee (Truschinger Exhibit 4), binding herself in solido with Spiropoulous and Flame-N-Burger.
When Portlock leased to Hanina Trus-chinger, neither Portlock nor Truschinger attempted to obtain the consent of Serio. So as to that sublease, we do not have a situation where Serio unreasonably withheld his consent; none was sought and none was obtained. Additionally, in an addendum prepared by Ms. Truschinger’s attorney, the lease stipulated that “Should the present sublessee [Ms. Truschinger] desire to sub-let, permission must be obtained in writing from Lessor [not sublessor] or his agent and such sub-let shall be handled by Lessor’s agent at the expense of the herein sub-lessee.”
Even if we accept the Trial Court’s finding of fact, that Serio tacitly consented to a sublease between Portlock and Truschinger, it would not follow that Serio tacitly consented to another sublease from Trus-chinger to Helen Pak, Buddy Pak, Mary Tsai, and Mark Tsai.
Under these facts and circumstances, even if Serio tacitly approved the lease from Portlock to Truschinger, I am unwilling to say that he abused his rights as a lessor. As an aside, even if the standard applied by the majority is the correct one, under these facts and circumstances I believe the Trial Court erred in holding Serio *212 unreasonably withheld his consent to a fourth sublessee of his property.